John A. DeSOUSA, Appellant,

v.

Hershel W. GOBER, Acting Secretary
of Veterans Affairs, Appellee.

No. 96–001.

United States Court of Veterans Appeals.

Oct. 31, 1997.

John A. DeSousa, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and R. Randall Campbell, Deputy Assistant General Counsel, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and KRAMER and STEINBERG, Judges.

STEINBERG, Judge.

The pro se appellant, veteran John A. De-Sousa, appeals a November 21, 1995, Board of Veterans' Appeals (BVA or Board) decision denying his claim for entitlement to educational assistance allowance under chapter 34 of title 38, U.S.Code [hereinafter education benefits]. Record (R.) at 11. The appellant has filed an informal brief, and the Secretary has filed a brief. For the reasons that follow, the Court will affirm in part the decision of the Board and vacate it in part and remand a matter.

## I. Background

The veteran's claim was previously before the Court in *DeSousa v. Brown*, 4 Vet.App. 561 (1993) (*DeSousa I* ), and a full statement of facts is set forth there.

The veteran had two consecutive periods of service in the U.S. Army, from July 1976 to March 1979 and from March 1979 to November 1981. R. at 91, 92. He was given an honorable discharge from his first period of service (R. at 65), but his discharge from his second period of service was "under conditions other than honorable" (R. at 64). An April 1985 Department of Veterans Affairs (VA) regional office (RO) administrative decision determined that (1) the character of discharge from his first service period was unconditional and therefore established his eligibility for VA benefits for the period of service from July 26, 1976, to July 25, 1979, and (2) that the discharge from his second

service period was "not considered to have been issued under other than dishonorable conditions" and therefore did not qualify him for VA benefits generally. R. at 92. This decision was apparently never appealed and became final.

In July 1980, while still on active duty, he was awarded, effective January 22, 1980, education benefits for correspondence-course study in electronics (R. at 49) at the National Radio Institute. R. at 51. In April 1985, he sought a change of program to "A.S. [Associate of Science] Computer Sci[ence]" at Austin Peay State University (R. at 55), and VA granted the change, noting: "Initiation of this program will be your first and only optional change of program" (R. at 96). In February 1986, he applied for another change of program, this time to a course in "microcomputers [and] microprocessors" (R. at 110), and VA also granted that change and stated: "This program will constitute your second change of program. A third or subsequent change of program may be approved only if found suitable to your interests, aptitudes, and abilities, *and* necessitated by circumstances beyond your control". R. at 134 (emphasis in original). In September 1988, the veteran requested a third change of program to pursue an "ASB [Business]—Computer Prog[ramming]" at another school, Ca-reerCom Junior College of Business (CJCB). R. at 147. It is this third change that gives rise to the present case.

In March 1989, the RO denied the veteran's request for education benefits for the CJCB course of study. R. at 164. The veteran filed a Notice of Disagreement (NOD) in April 1989 (R. at 169), the RO issued a Statement of the Case (SOC) (R. at 183), and, subsequently, the veteran timely filed a Form 1-9 (Substantive Appeal to BVA) (R. at 188). He was enrolled in the CJCB course of study from May 22, 1989, to May 31, 1990, and from August 20, 1990, to November 8, 1990. R. at 261.

The December 11, 1990, BVA decision appealed in *DeSousa I, supra,* denied the veteran education benefits for his third requested change of program on the ground that the Board did not "find that circumstances beyond [his] control interrupted or terminated

his program pursuit, and necessitated another change of program". R. at 223. The BVA applied the law then in effect, 38 U.S.C. § 3691 (1990) [hereinafter 38 U.S.C. § 3691 (1990) ], and regulation, 38 C.F.R. § 21.4234 (1990). In its April 19, 1993, opinion in *De-Sousa I,* the Court, relying upon *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991), concluded that liberalizing law and regulation adopted during the pendency of the appeal had potential bearing upon the veteran's case in that it might allow for the proposed third change of program. The Court thus vacated the 1990 BVA decision and remanded for the Board to determine (1) what was the correct delimiting date for the veteran's education benefits and (2) whether the veteran's CJCB course of study had constituted a change of program under the liberalizing law and regulation and, if so, whether that third change was still permissible because, pursuant to 38 C.F.R. § 21.4234(d)(3), it was "necessitated by circumstances beyond the control of the veteran". *DeSousa I,* 4 Vet.App. at 565.

On remand, the BVA determined in a December 1993 decision that the correct delimiting date for the veteran's pursuit of chapter 34 education benefits was July 26, 1989 (R. at 247), and remanded to the RO the issue of whether his CJCB course of study, pursued over the period from May 1989 to November 1990, constituted a change of program under the liberalizing law and regulation (R. at 248). A July 1995 General Counsel (GC) memorandum on this case, referencing a May 1994 GC advisory opinion, determined that "under the liberalized rules, the veteran's change of schools in 1989 did not ... constitute a change of program". R. at 271; *see also* R. at 266, 280. However, the GC memorandum concluded that effective-date rules under 38 U.S.C. §§ 5110(g) and 5113(a) and 38 C.F.R. § 21.4131(f) prohibited an award based on a liberalizing law or regulation for a period of study carried out before the effective date of the law or regulation (*ibid.*), found that the effective date of the liberalizing regulation, 38 C.F.R. § 21.4234(a), was September 4, 1992 (R. at 272), and thus concluded that "no payment may be authorized for [his] 1989 course pursuit" (*ibid.*).

In the November 1995 BVA decision here on appeal, the Board relied on the May 1994 GC advisory opinion in denying the veteran's claim for education benefits. R. at 10. The Board concluded as follows: (1) That the CJCB course of study did not constitute a change of program under the revised regulation (38 C.F.R. § 21.4234(a)) (R. at 7, 10); (2) that the veteran's delimiting date was July 26, 1989 (R. at 9); and (3) that effective-date rules, pursuant to 38 U.S.C. §§ 5110(g) and 5113(a) and 38 C.F.R. § 21.4131(f), precluded an award of education benefits for study pursued earlier than September 4, 1992 (R. at 10). The Board did not discuss whether the CJCB course of study had constituted a change of program under the prior law. A timely appeal to this Court followed.

## II. Analysis

The veteran raises the following two issues on appeal: (1) The condition of his discharge and (2) his entitlement to education benefits. As to the first issue, apparently in order to extend his delimiting period for use of chapter 34 education benefits, he asserts that his discharge from his second service period should be upgraded to honorable from under conditions other than honorable. Brief (Br.) at 3. As to the second issue, he contends that his CJCB course of study did not constitute a change of program that would preclude him from entitlement to education benefits under 38 C.F.R. § 21.4234(d)(3). Br. at 5.

### A. Condition of Discharge and Delimiting Date

The Court will address first the nature of the veteran's discharge and the related issue of his delimiting date, which, for the following reasons, separately preclude him from receipt of education benefits after July 25, 1989. To the extent that the veteran disputes the classification by the Department of the Army of his discharge from his second service period as "under conditions other than honorable" (R. at 64), he has not chosen the proper forum. The Court does not have jurisdiction over issues related to upgrading a veteran's discharge, and he must address this issue to the Army Board for Correction of Military Records (ABCMR). *See Harvey (James) v. Brown,* 6 Vet.App. 416, 424 (1994) ("any disagreement the veteran may have regarding the assigned discharge classification must be raised with the [ABCMR], not

VA"); *Lauginiger v. Brown,* 4 Vet.App. 214, 216 (1993) (to extent that service record may be incomplete, it is Secretary of military department, not VA, to whom veteran must look for relief for correction of military records).

 Insofar as the veteran challenges VA's characterization, in its April 1985 administrative decision, of his "under conditions other than honorable" discharge as being, pursuant to 38 C.F.R. § 3.12(d)(4) (1996), a discharge "not.. under other than dishonorable conditions" (R. at 92) and therefore a bar to VA benefits, he has not properly placed that issue before the Court. This Court's appellate jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski,* 928 F.2d 392, 393–94 (Fed.Cir.1991); *Skinner v. Derwinski,* 1 Vet.App. 2 (1990). The Court has jurisdiction to review only those final BVA benefits decisions prior to which an NOD was filed on or after November 18, 1988, as to an underlying decision of an RO or other agency of original jurisdiction. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687, § 401, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); 38 U.S.C. § 7105; *see generally Hamilton v. Brown,* 4 Vet.App. 528, 535–36 (1993) (en banc), *aff'd,* 39 F.3d 1574, 1583–85 (Fed.Cir. 1994). In the instant case, the issue surrounding the characterization, under 38 C.F.R. § 3.12(d)(4), of the conditions of the veteran's discharge as, in effect, under dishonorable conditions is not a subject of the BVA decision on appeal, and the record does not indicate that the veteran has ever filed an NOD as to the April 1985 VA administrative decision or as to any RO denial of any attempt by the veteran to reopen that decision. Therefore, because the Court can find no jurisdiction-conferring NOD, the Court will not address this contention. *See Slater v. Brown,* 9 Vet.App. 240, 243 (1996) (quoting *Isenbart v. Brown,* 7 Vet.App. 537, 541 (1995), for proposition that for Court to have jurisdiction to remand for Board's failure to adjudicate claim veteran must have NOD "sufficiently encompass[ing] the RO's failure to adjudicate" that claim); *Phillips v. Brown,* 10 Vet.App. 25, 37–38 (1997) (Steinberg, J., concurring in part and dissenting in part).

As to the veteran's delimiting date (that is, the end date) for using his chapter 34 benefits, under 38 U.S.C. § 3462(a)(1) and 38 C.F.R. § 21.1042(a)(1) (1995) (regulation withdrawn thereafter due to discontinuance of chapter 34 education-benefits program), he is not entitled to use chapter 34 benefits for a program of education pursued beyond the date 10 years after his last discharge from a VA-benefits-eligibility-conferring service period. The date of his discharge from such a service period is July 25, 1979 (R. at 92), and thus the last day for which he can be paid chapter 34 educational assistance is July 25, 1989. Because the Court presently has no jurisdiction to review the accuracy of the VA determination characterizing the discharge from his second service period as not under other than dishonorable conditions, and because section 3462(a)(1) is plain on its face, the Court holds that the veteran is not eligible to use his education benefits for a program of education pursued after July 25, 1989.

 The Court also notes that, regardless of the veteran's delimiting date, payment of education benefits for a program of education pursued after December 31, 1989, is precluded as a result of the discontinuation after that date of the chapter 34 education-benefits program. 38 U.S.C. § 3462(e) ("No educational assistance shall be afforded any eligible veteran under this chapter ... after December 31, 1989."); *see also* 38 C.F.R. § 21.1042(a)(2) (1995). The Court cannot "extend these benefits out of sympathy for a particular veteran". *Kelly (Richard) v. Derwinski,* 3 Vet.App. 171, 172 (1992) ("Congress expressly abrogated [c]hapter 34 education[ ] benefits for *all* veterans on December 31, 1989") (emphasis in original). Thus, the only chapter 34 education benefits that could possibly be paid here and hence are at issue in this case under chapter 34 are for the CJCB training in May, June, and July (through July 25) 1989.

### B. Change-of-Program Law and Regulation

The Court will consider two issues raised by the appellant's second contention on appeal—that his CJCB course of study did not constitute a change of program under VA law and regulation. First, the Court must determine whether the liberalizing law and regulation, both modified during the pendency of the veteran's initial appeal to this Court in *DeSousa I* and both relating to the definition of change of program (38 C.F.R. § 21.4234(a)), are applicable to the instant claim. *See Karnas supra* ("where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so"). The fundamental question implicated by *Karnas* is whether the old law or the new law would be more favorable to the veteran. Second, if it is determined that the new law would not be more favorable to the veteran, the Court must then address the application of the prior law—specifically the Board's implicit conclusion or assumption that the veteran's CJCB course of study was a change of program under the prior law and regulation (38 U.S.C. § 3691(a) (1990); 38 C.F.R. § 21.4234(a)(2) (1990)) *and* was not "necessitated by circumstances beyond ... [his] control" in accordance with 38 C.F.R. § 21.4234(d)(3) (1990), including whether the BVA failed to provide an adequate statement of reasons or bases for such a conclusion.

### 1. Liberalizing Law and Regulation

■ When the BVA initially decided (in December 1990) the change-of-program question as to the CJCB course of study, the applicable law provided:

(a) Except as provided in subsections (b) and (c) of this section, each eligible veteran and eligible person may make not more than one change of program of education, but an eligible veteran or eligible person whose program has been interrupted or discontinued due to the veteran's or person's own misconduct, the veteran's or person's own neglect, or the veteran's or person's own lack of application shall not be entitled to any such change.

(b) The Secretary, in accordance with procedures that the Secretary may establish, may approve a change other than a change under subsection (a) of this section (or an initial change in the case of a veteran or person not eligible to make a change under subsection (a)) in program if the Secretary finds that—

(1) the program of education which the eligible veteran or eligible person proposes to pursue is suitable to the veteran's or person's aptitudes, interests, and abilities; and

(2) in any instance where the eligible veteran or eligible person has interrupted, or failed to progress in, the veteran's or person's program due to the veteran's or person's own misconduct, the veteran's or person's own neglect, or the veteran's or person's own lack of application, there exists a reasonable likelihood with respect to the program which the eligible veteran or eligible person proposes to pursue that there will not be a recurrence of such an interruption or failure to progress.

(c) The Secretary may also approve additional changes in program if the Secretary finds such changes are necessitated by circumstances beyond the control of the eligible veteran or eligible person.

(d) As used in this section the term "change of program of education" shall not be deemed to include a change from the pursuit of one program to the pursuit of another where the first program is a prerequisite to, or generally required for, entrance into pursuit of the second.

38 U.S.C. § 3691 (1990). The applicable regulation then stated: "A change of program consists of a change in the educational[,] professional[,] or vocational objective for which the veteran or eligible person entered training and a like change in the type of courses required to attain a new objective" and mandated that a third change of program be approved only if "the additional change or changes are necessitated by circumstances beyond the control of the veteran". 38 C.F.R. § 21.4234(a), (d)(3) (1990). However, as noted above, during the pendency of the appeal, the statute and regula-

tion were revised as to the definition of a change of program. The applicable regulation, 38 C.F.R. § 21.4234(a), was amended to read:

> (a)(2) VA does not consider any of the following to be changes of program.
>
> (i) A change in the type of courses needed to attain a vocational objective.
>
> (ii) A change in the veteran's or eligible person's educational, professional[,] or vocational objective following the successful completion of the immediately preceding program of education, or
>
> (iii) A return to the veteran's or eligible person's prior educational, professional[,] or vocational objective following a change in program.

38 C.F.R. § 21.4234(a)(2) (1993) (amended on September 4, 1992). Shortly thereafter, the applicable law, 38 U.S.C. § 3691(d), was revised to provide that a change of program does not include "a change by a veteran or eligible person from the pursuit of one program to the pursuit of another program if—"

> (1) the veteran or eligible person has successfully completed the former program;
>
> (2) the program leads to a vocational, educational, or professional objective in the same general field as the former program;
>
> (3) the former program is a prerequisite to, or generally required for, pursuit of the subsequent program; or
>
> (4) in the case of a change from the pursuit of a subsequent program to the pursuit of a former program, the veteran or eligible person resumes pursuit of the former program without loss of credit or standing in the former program.

38 U.S.C. § 3691(d) (enacted on October 29, 1992). *See DeSousa I*, 4 Vet.App. at 563–64 (describing relevant changes in law and regulation).

In the instant case, VA was to consider on remand the application of the more favorable law and regulation to the veteran's claim for education benefits. *See Karnas, supra.* The July 1995 GC memorandum obtained on remand concluded: "[U]nder the liberalized rules, the veteran's change of schools in 1989 did not ... constitute a change of program". R. at 271. Applying this GC memorandum (*see* 38 U.S.C. § 7104(c) (BVA bound by

"precedent opinions of the chief legal officer of the Department"); 38 C.F.R. § 3.101 (1996)), the November 1995 BVA decision concluded that under the liberalized § 21.4234(a)(2) (1993) the CJCB course of study did not constitute a "change of program" that pursuant to 38 C.F.R. § 21.4234(d)(3) would have been a third change of program and thus have required a showing that the change was "necessitated by circumstances beyond ... [the veteran's] control". R. at 10. However, the BVA also determined that the effective-date rules (*see* 38 U.S.C. §§ 5110(g), 5113(a); 38 C.F.R. § 21.4131(f)) preclude application of this liberalizing regulation to a program of education pursued before the regulation's effective date. The Board concluded that the earliest date that the liberalizing law and regulation could apply is September 4, 1992, the effective date of the liberalizing regulation, 38 C.F.R. § 21.4234(a)(2) (1993). R. at 10.

The effective dates for the liberalizing changes at issue in this case are as follows: The effective date for the amendment to 38 C.F.R. § 21.4234(a)(2) (1993) was September 4, 1992 (57 Fed.Reg. 40,613 (1992) (to be codified at 38 C.F.R. § 21.4234(a))); the law modifying 38 U.S.C. § 3691(d) was enacted on October 29, 1992, and that date is presumed to be the effective date of amendments made by that provision because no specific effective date was provided. *See* Veterans' Benefits Act of 1992, Pub.L. No. 102–568, § 317, 106 Stat. 4320, 4334 (1992) (specifying no effective date for section); *Gozlon–Peretz v. United States*, 498 U.S. 395, 404, 111 S.Ct. 840, 846, 112 L.Ed.2d 919 (1991) ("[i]t is well established that absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment"); *Allin v. Brown*, 6 Vet.App. 207, 211 (1994) ("amendment contained no express effective date, and thus it must be presumed to take effect upon the enactment date").

Effective dates for awards of education benefits are set by reference to the effective-date rules governing disability-compensation awards. *See* 38 U.S.C. § 5113(a) ("effective dates relating to awards under chapters 30, 31, 32, 34, and 35 [of title 38] ... correspond

to effective dates relating to awards of disability compensation"); *Erspamer v. Brown,* 9 Vet.App. 507, 512–13 (1996) (Kramer, J. concurring) ("only effect section 5113(a) has is simply to provide that, to the extent feasible, the same effective date template governs education[ ] benefits as governs awards of compensation, DIC, and pension"); 38 C.F.R. § 21.4131(f) (1996) (effective dates for awards of education assistance under liberalizing laws and regulations will be fixed "[i]n accordance with facts found, but not earlier than the effective date of the act or administrative issue").

As to the effective date of disability compensation awards, section 5110(g) provides: "[W]here compensation, dependency and indemnity compensation, or pension is awarded or increased *pursuant to* any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue." 38 U.S.C. § 5110(g) (emphasis added). *See Green (Doris) v. Brown,* 10 Vet. App. 111, 119 (1997) (section 5110(g) limits retroactive application of law to effective date of liberalizing legislation); *McCay v. Brown,* 9 Vet.App. 183, 187 (1996) ("plain language of section 5110(g) prohibits a retroactive award prior to the effective date of the legislation"), *aff'd,* 106 F.3d 1577 (Fed.Cir.1997). Hence, the effective date for education benefits awarded "pursuant to" liberalizing law or regulation also may be no earlier than the effective date of the Act or administrative issue.

Section 5110(g), as the BVA did not err in finding, precludes an effective date earlier than the effective date of the liberalizing law or regulation "pursuant to" which such benefits would have to be provided. Because that effective date, September 4, 1992, at the earliest, is after the pursuit of the May through July 25, 1989, CJCB course of study at issue, application of the liberalizing law and regulation could not benefit the veteran in this case.

### 2. *Prior Law and Regulation*

■ The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Simon v. Derwinski,* 2 Vet. App. 621, 622 (1992); *Masors v. Derwinski,* 2 Vet.App. 181, 188 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990). Even thought the Court has determined that the liberalizing law and regulation are not applicable to the veteran's pursuit of the CJCB course of study—and this is what the BVA found here—the Board must still render a reasoned decision under *Karnas, supra,* as to whether his claim would receive a more favorable outcome, *i.e.,* something more than a denial of benefits, under the *prior* law and regulation. Just as the Court held in *Karnas, supra,* that where a law or regulation has been modified during the pendency of an appeal, the veteran is entitled to the benefit of the *more* favorable law or regulation unless Congress provides otherwise or permits the Secretary to do otherwise and the Secretary does so, the Court has likewise held that *Karnas* implicitly mandates that a new law or VA regulation is not applicable to a claimant where the new law or regulation is *less* favorable and VA has not provided that the regulation should have retroactive effect. *See Lasovick v. Brown,* 6 Vet.App. 141, 151 (1994). Thus, the Court's holding in *Karnas* requires that in all cases VA fully adjudicate a veteran's claim under *both* the new *and* old law and regulation to determine the extent to which each may be favorable to the veteran.

■ In view of the above analysis, the Court finds it necessary, for either of two reasons, to remand the veteran's claim for a determination, under prior law and regulation, of whether his third change of program was, pursuant to 38 C.F.R. § 21.4234(d)(3), "necessitated by circumstances beyond [his] control". 38 C.F.R. § 21.4234(d)(3) (1996).

First, to the extent that the 1995 BVA decision may be interpreted as incorporating the factual and legal analysis, under the prior law and regulation that was articulated in the 1990 BVA decision, in spite of the fact that that decision was entirely vacated by the Court in *DeSousa I,* the previous decision's statement of reasons or bases for that determination of the merits is inadequate. In

concluding that the change of program was not necessitated by circumstances beyond the veteran's control, the 1990 BVA decision had noted that he had "discontinued his correspondence training because of 'bad service'"; the BVA then had concluded: "The Board has considered this claim, but does not find that circumstances beyond the veteran's control interrupted or terminated his program pursuit, and necessitated another change of program." R. at 223. A "bare conclusory statement" such as this does not satisfy the requirements set forth in 38 U.S.C. § 7104(d)(1) and *Gilbert, supra. Watson v. Brown,* 4 Vet.App. 309, 315 (1993); *see also Simon* and *Masors,* both *supra.*

Alternatively, the Court notes that the veteran perfected his appeal to the Board in 1989. *See* 38 U.S.C. § 7105(a) ("[a]ppellate review will be initiated by a[n][NOD] and completed by a substantive appeal after [an SOC] is furnished"). He timely filed an NOD in April 1989 (R. at 169; *see* 38 U.S.C. § 7105(b)(1)); the RO did not, upon review, resolve the disagreement, and it issued an SOC (R. at 183; *see* 38 U.S.C. § 7105(d)(1)); the veteran then timely filed a Form 1–9 (Substantive Appeal to BVA) (R. at 188; *see* 38 U.S.C. § 7105(d)(3)). He was thus entitled to a decision by the Board on the education-benefits claim as to which he had timely perfected an appeal to the BVA. *See Godfrey (Willis) v. Brown,* 7 Vet.App. 398, 410 (1995) ("[u]pon receipt of a 1–9 Appeal, the BVA is required to address all issues which are reasonably raised from a liberal reading of an appellant's substantive appeal"); *Chisem v. Brown,* 4 Vet.App. 169, 176 (1993); *see also Mintz v. Brown,* 6 Vet.App. 277, 281 (1994) (Board does not have "discretion to decide whether or not to exercise jurisdiction"; if Board has jurisdiction, it must exercise it). Although the 1990 BVA decision addressed the question of whether the veteran's third change of program was necessitated by circumstances beyond his control (R. at 223), that decision was subsequently vacated by the Court in *DeSousa I,* 4 Vet.App. at 561, 565, and it may be concluded that vacatur had the legal effect of nullifying the Board's 1990 decision. *See Yoma v. Brown,* 8 Vet.App. 298, 299 (1995); *see also* BLACK'S LAW DICTIONARY 1548 (6th ed.1990) (defining vacate as "[t]o annul; to set aside;

to cancel or rescind"). Thus, under this theory, the veteran has not received the Board adjudication to which he was entitled on his duly appealed claim.

Accordingly, on either of the foregoing analyses, the Court thus holds that the Board has not provided an adequate statement of reasons or bases as to the effect of the application of the *prior* law and regulation to the veteran's claim for education benefits. Hence, the Court will remand the matter for the Board to provide a reasoned decision on the application of prior law and regulation. *See* 38 U.S.C. § 7104(d)(*l* ); *Gilbert, supra.*

### III. Conclusion

Upon consideration of the record and the submissions of the parties, the Court affirms that part of the November 21, 1995, BVA decision that finds (1) that the veteran's delimiting date for education benefits is July 26, 1989 (*see* 38 U.S.C. § 3461(a)(1); 38 C.F.R. § 21.1042(a)(1)); (2) that the veteran is not entitled to education benefits after December 31, 1989 (*see* 38 U.S.C. § 3462(e); 38 C.F.R. § 21.1042(a)(2)); and (3) that the veteran is not entitled to the benefits of the liberalizing law or regulation as to his CJCB course of study (*see* 38 U.S.C. § 5110(g)). The Court vacates in part the BVA decision as to the Board's failure to provide an adequate statement of reasons or bases (*see* 38 U.S.C. § 7104(d)(1); *Gilbert, supra* ), for its implicit denial of the veteran's claim for education benefits under prior law and regulation, and remands that matter for expeditious further proceedings and expeditious adjudication consistent with this opinion and in accordance with applicable law and regulation, including section 302 of the Veterans' Benefits Improvements Act of 1994, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute

a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.